## Edelman v. Flyte

*Elias W. Spengler*, for plaintiffs.
*Mindlin & Sigmon*, for defendants.

PALMER, J., June 8, 1959.—This is a suit in equity in which plaintiffs seek to have defendants declared trustees of certain funds, and for an accounting.

From the pleadings and the testimony, we make the following

*Findings of Fact*

1. On August 16, 1956, George A. Flyte died as the result of an automobile accident and was survived by his widow, Lorayn Flyte, and five children: Dennis J. Flyte, Verna Edelman, Oscar Flyte, Richard Flyte and Sterling Flyte.

2. At the time of decedent's death, Lorayn Flyte, his widow, and Dennis J. Flyte, his minor unemancipated child, were both dependent upon him.

3. At the time of decedent's death, Verna Edelman, Oscar Flyte, Richard Flyte and Sterling Flyte were all adult emancipated children who suffered no pecuniary loss by reason of the death of their father.

4. On February 4, 1957, Lorayn Flyte, as administratrix of the estate of George A. Flyte, deceased, filed with the prothonotary of Northampton County an amicable action in trespass against Elmer D. Kennedy and Lehigh and New England Railroad Company, under the wrongful death and survival statutes. The pleadings so filed were designated a "Petition to Compromise Action and to Designate Persons Entitled to Recover."

5. Written notice of the filing of said action and of the hearing date thereon was given to Verna Edelman, Oscar Flyte, Richard Flyte and Sterling Flyte, plaintiffs herein, and these persons attended the hearing on the petition before the Hon. Carleton T. Woodring, judge of the courts of Northampton County, on February 4, 1957.

6. At the conclusion of the hearing before Judge Woodring, the court entered an order approving the

compromise set forth in the petition, i.e., $10,696.84 to be paid plaintiff as administratrix of the estate of George A. Flyte, deceased, under the wrongful death act and $1,303.16 to be paid to her as administratrix under the survival action.

7. The Nazareth National Bank and Trust Company, having been appointed guardian of Dennis J. Flyte, received from the compromise $3,800 as guardian for the use and benefit of Dennis J. Flyte.

## Discussion

The problem presented is whether moneys recovered by a widow-administratrix under the wrongful death act for the death of her husband shall be retained by her for the use of herself and decedent's minor dependent child, or is to be distributed to them and as well to decedent's adult, emancipated children under the intestate laws.

The "Death by Wrongful Act" statute, enacted in Pennsylvania in 1851, created a right of action unknown to the common law in cases where death resulted from violence or negligence and no suit was brought by the injured party in his lifetime. This act (Act of April 15, 1851, P. L. 669, 12 PS §1601, and the Acts of April 26, 1855, P. L. 309, and June 7, 1911, P. L. 678, 12 PS §1602), after first creating the right of action (12 PS §1601) provides that: "The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives; . . . and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy . . .": 12 PS §1602.

Under the Intestate Act of April 24, 1947, P. L. 80, 20 PS §1.1 etc., where there is a surviving spouse and more than one child, one-third of the estate of decedent descends to the widow and the remainder is divided equally between the children.

The interpretation of the wrongful death act has given our courts considerable difficulty.

The original act of 1851 provided that the action could be brought by the widow or personal representative of decedent, if decedent had brought no action for damages for the injuries causing his death. Thus, as originally enacted, the right of enforcement was in the widow or, if there were no widow, in the personal representative of decedent.

The act of 1855 preserved the right of action created by the original act but did not specifically state by whom the right should be enforced. Thus, it states that: "The persons entitled to recover damages . . . shall be the husband, widow, children, or parents of the deceased," which is followed by the provision that, "the sum recovered shall go to them in the proportion they would take [the decedent's] . . . personal estate. . . ."

Most of the early cases under the act involved resolving the question as to who was entitled to bring the action.[1]

Much of the difficulty which confronts us in determining whether decedent's adult children should or should not share in the proceeds of the wrongful death action, stems from dicta in these cases,[2] although the precise problem of the right person to sue has since been resolved by the adoption of R. C. P. 2202.

Before there can be any recovery by those in a family relationship to decedent under the wrongful

---

[1] See, for example, Lewis v. Hunlock's Creek & Muhlenburg Turnpike Company, 203 Pa. 511; Lehigh Iron Company v. Rupp, 100 Pa. 95; The North Pennsylvania Railroad Company v. Robinson, 44 Pa. 175, and the later cases of Gaydos v. Domabyl, 301 Pa. 523, and McFadden v. May, 325 Pa. 145.

[2] Compare for example: Gaydos v. Domabyl, supra, and the Lewis v. Hunlock's Creek & Muhlenburg Turnpike Company, supra, cases. Compare also Cullison v. Hartman, 9 D. & C. 2d 359, with McAlister v. Stevens, 41 D. & C. 612.

death act, there must be a pecuniary loss which has been defined to be "a destruction of a reasonable expectation of pecuniary advantage from the deceased": Gaydos v. Domabyl, supra. As stated in The Pennsylvania Railroad Company v. Butler, 57 Pa. 335: "That loss is what the deceased would have probably earned · by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and which would have gone for the benefit of his children, taking into consideration his age, ability and disposition to labor, and his habits of living and expenditure."

In dictum in the Gaydos case, the court said: "Where all [the children] sue and less than that number have been damaged,[3] the verdict must be confined to the loss shown by those damaged . . ., even though the verdict and distribution of the amount, under the act, must be made among all the children. . . ."

If we follow this dictum, we must find in favor of the emancipated adult children in our case.

On the other hand, defendants urge that this dictum is in direct conflict with that in Lewis v. Hunlock's Creek & Muhlenberg Turnpike Company, supra, as follows: "Appellants are children of the deceased and as such would share in his estate in case of intestacy, therefore the argument that they are entitled to share in the sum recovered as damages for his death. But the provision read in connection with the whole act and the act of 1851 in pari materia is not so broad as this. The 'sum recovered shall go to them' is the phrase and by 'them' is meant the persons entitled to recover it. The provision is not for a further right of action but only for distribution in an action previously given. Such right is wholly statutory, and under the act of 1851 was vested in the widow 'or if there be no widow,

---

[3] i.e., have suffered pecuniary loss.

the personal representatives.' By the act of 1855, supra, the right is restricted to certain relatives and their priority among themselves is defined. They cannot all claim jointly but each class in its own right and its own order. The parents, for example, have no standing at all except in the absence of husband or widow and children. The act first gives the right of action, and then prescribes the mode of distribution of the sum recovered, but that necessarily means distribution among those entitled to sue. It would be absurd to suppose that in the same sentence the statute meant to give part of the damages to those to whom it had denied the right of action."

Defendants contend that if the Supreme Court in the Gaydos case had intended to reverse Lewis v. Hunlock's Creek & Muhlenburg Turnpike Company, it would have so stated.

In Armstrong v. Berk, 96 F. Supp. 182, Judge Grim of the Eastern District of Pennsylvania, considered a situation arising in Pennsylvania where decedent, who was divorced, left two minor children living with their mother and whom he did not support, and a mother whom he did support. Under the Intestate Act, the children would have shared the estate to the exclusion of the mother. The court analyzed the various cases dealing with the distribution of damages in cases of this type and found that: ". . . this rule emerges: Where anyone of a class has suffered pecuniary loss, the Intestate Act will be followed and all the members of the class share equally despite differences in pecuniary loss, but if there is a class, none of whose members can show pecuniary loss, the class will be excluded from sharing in the proceeds, and for the purposes of distribution, the class will be treated as though it does not exist."

By way of dictum the court also stated that: "Where

there are children, some of whom were being supported by the decedent, and some of whom were not, the terms of the Intestate Act are followed and all the children share in the proceeds despite the fact that in this situation children share in the recovery who have suffered no pecuniary loss and their recovery takes from children who have suffered loss, part of the sum which has been awarded them to make good their loss." Accord dictum in Cullison v. Hartman, supra.

We, of course, recognize that if the dicta in the Gaydos, Armstrong and Cullison cases be followed, the result may appear inequitable in that those who suffered no loss gain what has been termed a "windfall." This inequity has caused some of our lower courts to follow the dictum in Lewis v. Hunlock's Creek & Muhlenburg Turnpike Company, supra.[4]

The problem presented in all of the cases is well expressed in 3 Goodrich-Amram Procedural Rule Service, §2201-31: "Either the provisions of the Wrongful Death Act must be strictly followed and a distribution made under the Intestate Act, without regard to possible windfalls, or the act must be interpreted so as to prevent an inequitable benefit to particular individuals. The real difficulty is where to stop, if the second alternative is adopted. Are we merely to exclude an entire class if no member of the class is entitled to recover; are we to exclude any individual if he has no expectancy of support regardless of the presence of other qualified members of the same class; or are we to do real equity and apportion the recovery among the injured parties in strict accordance with their actual loss and without regard to the distribution ordered by the Intestate Act? If the Intestate Act is once disre-

---

[4] See, for example, McAlister v. Stevens, supra; Leiby v. Hanlon, 24 D. & C. 508. See also Ditkosky v. Schreiber Trucking Company, 82 D. & C. 319.

garded, there is no logical reason for stopping short of the final step; there is no reason for not solving all the questions raised . . . by adopting the rule 'to each according to the injury he has actually received'."

If the latter view were adopted the result would be that castigated in The North Pennsylvania Railroad Company v. Robinson, 44 Pa. 175, where Justice Thompson noted that: "The recovery is for the benefit of all the children for the statute provides that the money so recovered shall be distributed in the same proportion amongst them, as in the case of the estate of an intestate. This answers the objection made, that none may recover but such of the children as are *injured* by the death. The law gives it to them all in equal proportions, and if we are careful to remember that the value of the life lost, to be estimated by a pecuniary standard, is what is to be recovered for, we shall fall into no such error as in supposing that none but those who can show some actual damage, are entitled to recover. If such were to be the rule, we should have the indecent spectacle of an investigation whether the loss of a parent or child was or was not in fact an advantage rather than a loss; for certainly, if none be allowed to recover but such as are able to show a pecuniary loss, the defendants would, with great apparent reason at least, be entitled to claim the right to prove the contrary, and to show peradventure that, by the death, the party suing may have succeeded to an estate or, on the other hand, had been relieved from the burden of maintenance. In case of the death of aged persons or helpless infants, we might expect in the application of such a rule to have the point discussed whether the death was an actual loss or gain. The law means not to open the door to anything so shocking."

Upon due deliberation, we conclude that the dictum

in the Gaydos case, as followed in Cullison v. Hartman, supra, and as expressed in the general rule noted in Judge Grim's opinion in Armstrong v. Berk, is the view we must adopt. If this results in inequities, the cure lies with the legislature and not the courts: 3 Goodrich-Amram, Procedural Rules Service, §2201-31; XXV Pennsylvania Bar Association Quarterly, 284 (April 1954); Cullison v. Hartman, supra.

We therefore find, as a matter of law, that plaintiffs, Verna Edelman, Oscar Flyte, Richard Flyte and Sterling Flyte, have an interest in the moneys recovered by defendant Lorayn Flyte, as administratrix of the estate of George A. Flyte, deceased, and that the same is distributable to them respectively in the proportion they would take the personal property of decedent under the Intestate Act of 1947.

There was some testimony introduced at the hearing to the effect that plaintiffs having been notified of the hearing on the compromise settlement of the amicable action and having been present and having permitted the compromise to be approved without objection, waived any rights they thereafter had to question the compromise. We do not agree with this contention, particularly since they were not represented by counsel, were not asked to approve or disapprove the compromise and further because the order approving the compromise and directing distribution provided that the moneys received were to be "for and in behalf of the said estate and the heirs thereof."

### Conclusions of Law

1. Verna Edelman, Oscar Flyte, Richard Flyte and Sterling Flyte are entitled to their intestate share in the moneys received in the compromise of an amicable action in trespass under the wrongful death act against Elmer D. Kennedy and Lehigh and New England Railroad Company.

2. Plaintiffs have not surrendered such rights by waiver.

3. Plaintiffs are entitled to an accounting of the moneys received by Lorayn Flyte, administratrix of the estate of George A. Flyte, deceased, in compromise of the said action.

### Decree Nisi

And now, June 8, 1959, it is ordered, adjudged and decreed that Lorayn Flyte, administratrix of the estate of George A. Flyte, deceased, and Nazareth National Bank and Trust Company, guardian of the estate of Dennis J. Flyte, a minor, are trustees for Verna Edelman, Oscar Flyte, Richard Flyte and Sterling Flyte, plaintiffs above named, of such share of the moneys recovered by the said Lorayn Flyte, administratrix of the estate of George A. Flyte, deceased, from Elmer D. Kennedy and Lehigh and New England Railroad Company, under a certain compromise of an action brought against the said Elmer D. Kennedy and Lehigh & New England Railroad Company under the wrongful death and survival statutes, as is due to them, respectively, under the provisions of the Intestate Act of 1947, as children and heirs at law of George A. Flyte, deceased, and it is further ordered that the said Lorayn Flyte, administratrix of the estate of George A. Flyte, deceased, and Nazareth National Bank and Trust Company, guardian of the estate of Dennis J. Flyte, a minor, file in this case an account of all moneys so recovered by them, within 20 days from final decree, subject to a decree of distribution by the court.

The prothonotary shall enter this decree nisi and give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi, and if no exceptions be filed thereto within 20 days after service of such notice, the decree entered nisi will become the final decree as of course.